THOMAS, Judge.
In July 2015, Angel Ariel Zubia Mendias, a Mexican citizen, was arrested and charged with trafficking in methamphetamine. The Cullman Circuit Court set his bail in the amount of $1 million. In August 2015, 1 Quick Bail Bonds, LLC ("1 Quick"), posted bond in the amount of $25,000 for his release. Upon release, Mendias fled to Arizona and did not appear for his trial. The circuit court ordered that the bond be conditionally forfeited. The forfeiture, in the amount of $1 million, was made final on November 8, 2016.
On February 15, 2017, the circuit court entered an order requiring payment of escrow funds held pursuant to an escrow agreement between the circuit court, 1 Quick, and Traditions Bank. Because 1 Quick did not remit payment, the circuit court ordered Traditions Bank to pay the State $25,000 plus a fee. The record contains a copy of a check in the amount of $25,635.01 made payable to the circuit court.
On March 6, 2017, 1 Quick filed a Rule 60(b), Ala. R. Civ. P., motion in the circuit court requesting that the final forfeiture judgment be set aside and alleging that,
"through the diligence and efforts of [1 Quick] (as well as the Cullman Sheriff[']s Department), [Mendias] has been located, arrested, and is now detained/imprisoned in the Cullman County Detention facility."
The circuit court entered an order granting 1 Quick's request that the final forfeiture judgment be set aside; however, the next day the circuit court vacated the order and required 1 Quick to provide proof demonstrating that Mendias was in custody. The record contains a document indicating that Mendias had been arrested and incarcerated in the Cullman County Detention Center on March 30, 2017, as opposed to March 6, 2017.
On April 7, 2017, 1 Quick moved the circuit court to be released as bondsman for Mendias and to remit the final forfeiture of the bond pursuant to § 15-13-139, Ala. Code 1975, which provides, in its entirety:
"In forfeiture cases where the sureties have paid the amount of the forfeiture into the court or in cases where the *1224 forfeiture has been made final or absolute and there is no further litigation pending on the forfeiture, and the surety locates the defendant and causes the return of the defendant to the custody of the court where the bond was forfeited, and if the defendant was substantially procured by actions of the surety, and the administration of justice has not been thwarted nor the successful prosecution of the defendant has been affected, then the court which ordered the forfeiture, shall have full power and jurisdiction in all proceedings conducted pursuant to this article and within a period of six months from the date of issuance of any final forfeiture judgment, to consider any costs to the state or its subdivisions which resulted as a cause of the default, if any, and upon giving consideration thereto, may, in the court's discretion, remit the whole of the penalty of the bail, or undertaking, or any portion thereof, which is in excess of any costs to the state or its subdivisions, and render a new final judgment against the sureties appearing upon the bail bond or undertaking. In forfeiture cases, if the judgment has been paid into the State or Municipal Treasury, the court may issue an order to the custodian of the treasury to make a refund to the sureties."
On May 6, 2017, the circuit court granted 1 Quick's request to be released as bondsman for Mendias, and, on June 29, 2017, the circuit court entered a final judgment in favor of the State regarding 1 Quick's request to remit the final forfeiture of the bond.
On July 6, 2017, 1 Quick filed a notice of appeal to the Alabama Court of Court of Criminal Appeals, which transferred the appeal to this court. See Wells v. State, 675 So.2d 886 (Ala. Civ. App. 1996) ; see also Ex parte Board of Pardons & Paroles, 793 So.2d 774, 777 (Ala. 2000) (citing Ex parte Moore, 244 Ala. 28, 29, 12 So.2d 77, 77 (1942) )(explaining that our supreme court has historically recognized that a proceeding involving a bond forfeiture is civil in nature). Because the amount involved exceeds $50,000, we transferred 1 Quick's appeal to the supreme court, pursuant to § 12-1-4, Ala. Code 1975. The supreme court then transferred 1 Quick's appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
On appeal, 1 Quick argues that the circuit court abused its discretion by concluding that it was not entitled to remission of the final forfeiture judgment.
"Under the language of § 15-13-139, Ala. Code 1975, a trial court is given complete discretion to remit all or any portion of a final forfeiture judgment. We note that it is the duty of a reviewing court to presume that the trial court properly exercised its discretion when a question of its discretion is raised on appeal. Baumler v. Baumler, 368 So.2d 864 (Ala. Civ. App. 1979). This court will not revise a trial court's exercise of its discretion unless it determines from the evidence that the trial court plainly and palpably erred. Livengood v. Sechler, 382 So.2d 567 (Ala. Civ. App. 1980)."
Wells, 675 So.2d at 887-88.
Joshua Lee McElhone, the owner of 1 Quick, testified that he had been in the bail-bond business for 19 years. McElhone testified that it was common practice for undocumented aliens to contact bondsmen to post bail, because, according to McElhone, posting bail is the "quickest way" to cause the United States Immigration and Customs Enforcement Agency ("ICE") to initiate deportation proceedings, which, he said, defendants prefer "every time" over incarceration.
McElhone said that, when he posted bail for the release of Mendias in exchange for *1225 Mendias's payment of $5,000, he had been aware that Mendias was an undocumented alien and that ICE had a "detainer" on Mendias. McElhone explained that he had expected that, when Mendias was released from the Cullman County Detention Center, ICE would assume his custody, and he would be deported.
McElhone testified that, after he had located Mendias in Arizona, he notified the Pima County, Arizona, Sheriff's Department; the Cullman County Sheriff's Department; and the United States Marshals Service. He said that Mendias was taken into custody and that, at the time of the bond-forfeiture hearing, Mendias was incarcerated in the Cullman County Detention Center. McElhone insisted that, but for his efforts, Mendias would not have been located. However, McElhone admitted that Mendias had been returned to custody by the United States Marshals Service nearly five months after the forfeiture had been made final; that McElhone had not been qualified to do, he said, "bounty work"; and that he had been informed that "being a bail agent wasn't good enough, that I had to go through our local law enforcement and get them to write a letter submitting why this individual needed to be picked up."
Thus, we conclude that the circuit court could have reasonably determined that Mendias's return to custody had not been "substantially procured by" McElhone's actions. See § 15-13-139. Furthermore, Mendias fled in August 2015, the bond was conditionally forfeited in May 2016, the forfeiture was made final in November 2016, and Mendias was returned to custody in March 2017. In Ex parte Board of Pardons & Paroles, 793 So.2d at 778, our supreme court explained:
"Once a forfeiture is made final, the money forfeited becomes 'public money of the State General Fund.' See Ala. Code 1975, § 15-13-130. When [the defendant] failed to return for the completion of his trial, the bond was forfeited. Once the forfeiture was made final, the money became the property of the State, and remission of any portion of the amount forfeited would have been an act of grace."
(Footnote omitted.) Whether to remit all or any portion of the amount forfeited or to deny 1 Quick's request was a matter within the sound discretion of the circuit court. 1 Quick has failed to demonstrate that the circuit court abused its discretion. Therefore we affirm the circuit court's judgment.
AFFIRMED.
Thompson, P.J., and Pittman, Moore, and Donaldson, JJ., concur.